# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| KHALED ASADI § | |
| Plaintiff § | |
| § | |
| v. § | CIVIL ACTION NO. 4:12-cv-00345 |
| § | |
| G. E. ENERGY (USA), LLC, § | |
| Defendant. § | |

## PLAINTIFF'S AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Khaled Asadi (hereafter "Plaintiff") and files this his Amended Original Complaint against his former employer G.E. Energy (USA), LLC (hereafter "Defendant") and would show the Court as follows:

### A. Parties

1.  Plaintiff, Khaled Asadi, is an individual that is a citizen of the State of Texas. Mr. Asadi maintains dual citizenship in both the United States and Iraq.

2.  Defendant, G.E. Energy (USA), LLC is a foreign corporation that is organized under the laws of the State of Texas. Defendant may be served with process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Suite 2900 Dallas, Texas 75201-4234.

### B. Jurisdiction and Venue

3.  The Court has jurisdiction over this action pursuant to section 15 USC § 78u-6(h)(1)(B)(i)(2012). The Anti-Whistleblower Retaliation provisions of the Securities Exchange Act provide that an individual who alleges discharge or other discrimination in violation of

[The Anti-Whistleblower Retaliation provisions] may bring an action under this subchapter in the appropriate district court of the United States. Plaintiff Khaled Asadi was employed by the Defendant in Amman, Jordan as the G.E.-Iraq County Executive from September 29, 2006 to June 24, 2011. Mr. Asadi asserts that he was discharged after advising his supervisors of potential violations of company policies and the Foreign Corrupt Practices Act ("FCPA") committed by G.E. in pursuing a lucrative, multi-year contract with the Iraqi government.

4.  Venue lies in this court because the defendant maintains a significant business presence in this district and may be found and served with process in this district.

5.  In connection with the transactions, acts, practices, and course of business described in this Complaint, Defendant G.E. Energy, directly or indirectly has made use of the means or instrumentalities of interstate commerce, of the mails, of the facilities of a national security exchange, and/or of the means and instruments of transportation or communication in interstate commerce.

6.  There is no district where suit may otherwise be brought under 28 U.S.C. § 1391(b)(3) since the majority of the events giving rise to the suit occurred in a foreign country.

### C. Related Party

7.  G.E. Energy (USA), LLC is a wholly owned subsidiary of General Electric Company (hereinafter "G.E."). G.E. is a highly diversified company based in Schenectady, New York.

8.  G.E.'s common stock is registered with the Securities and Exchange Commission pursuant to Section 12(b) of the Exchange Act and the company is obligated to file reports on Forms 10-K. G.E.'s common stock is traded on the New York Stock Exchange.

## D. Factual Allegations

9.      On or about September 29, 2006, Plaintiff, Khaled Asadi, an Iraqi-born resident of Houston, Texas, was offered and accepted a temporary assignment to become the G.E. Country Executive for Iraq.

10.     Although he remained a U.S.-based employee, in accepting this position Mr. Asadi agreed to temporarily relocate to Amman, Jordan where he would have an office.  G.E. would coordinate the Plaintiff's housing, travel and return through its Global Mobility Services division.

11.     Mr. Asadi brought outstanding qualifications to his new assignment having worked in various capacities domestically and abroad for G.E. over the prior 8 years.

12.     In addition, he was fluent in Arabic and possessed an innate understanding of Iraqi culture as well as significant contacts both inside and outside of Iraq's central government.

13.     As the Country Executive, the Plaintiff was required to maintain close interaction and coordination with Iraq's governing bodies in securing and managing energy service contracts for G.E.

14.     On or about June of 2010 Mr. Asadi met with one of his contacts within the government regarding negotiations for a Joint Venture Agreement between G.E. and the Iraqi Ministry of Electricity.

15.     At this meeting Mr. Asadi was made aware of concerns within the government that G.E. had hired Iman Mahmood, a woman closely associated with Mr. Raad Al Haris, Senior Deputy Minister of Electricity, in order to curry favor with the Minister while negotiating a lucrative Joint Venture agreement.[1]

---

[1] The Joint Venture Agreement between GE and the Ministry of Electricity was sign in Baghdad on December

16.     In his capacity as Sr. Deputy Minister, Raad Al Haris was the government "sponsor" of the Joint Venture agreement with G.E.

17.     The allegation was that Raad Al Haris had specifically requested that that G.E. hire Mahmood for this position.

18.     Although the nature of their relationship was unclear, the source specifically warned that G.E. was "pimping its way to the agreement with the hiring of [Mahmood]."

19.     It was further alleged that Mahmood had become the main point of contact for G.E. with the Sr. Deputy Minister's office while negotiating the Joint Venture agreement.

20.     The proposed Joint Venture agreement between G.E. and the Ministry of Electricity had long been a subject of speculation for within the Iraqi government because it was to be a "Sole Source" contract which is generally not allowed under Iraqi contracting laws.

21.     Concerned that the hiring of Mahmood could be both damaging to the negotiations and potentially violate the FCPA, Mr. Asadi immediately raised this issue with his supervisor Mr. Joseph Anis, a Regional Executive for G.E. in the region.

22.     After discussing the issue with Mr. Anis, the Plaintiff brought the issue to the attention of a colleague from G.E.'s Oil and Gas division, which also had an interest in the Joint Venture agreement.  Together they decided to take the concern a step further by raising it with the ombudsperson for G.E.

23.     The ombudsperson later contacted Mr. Asadi directly and interviewed him thoroughly regarding the issue.  Mr. Asadi was assured that the company would follow-up with him as the investigation proceeded.

24.     Shortly after his discussion with the ombudsperson Mr. Asadi received his 11th

---

30, 2010.  The Exclusive Materials and Repairs provision is estimated to be valued at $250,000,000 for the seven year agreement.

performance review with G.E.

25. Although his previous 10 reviews had been positive, this time the review was surprisingly negative. More troubling was the lack of specific performance issue(s) or an opportunity to correct or improve his performance.[2]

26. Following this performance review Mr. Asadi began to experience harassment and pressure to step down from his position.

27. His supervisor Joseph Anis specifically encouraged him to accept a reduced role in the region with little to no responsibility.

28. This came as a complete shock to Mr. Asadi who had recently had his assignment with G.E. extended for another two years.

29. The pressure to step down soon became unbearable as G.E. began constant and aggressive severance negotiations with Mr. Asadi both in person and via teleconference.

30. These negotiations continued until the defendant abruptly ended all discussions and terminated the Plaintiff's employment on June 24, 2011.

31. Mr. Asadi was informed of his termination via e-mail by David Lisabeth in Human Resources for G.E. Energy. *See* EX.A

32. In notifying Mr. Asadi of his termination Mr. Lisabeth took the extraordinary step of informing him that G.E. Energy "was exercising its right to terminate [your] employment as an at-will employee as allowed under U.S. law." *Id.*

33. He further stated that "as a U.S.-based employee you will be terminated *in the United States* and you will be paid for two weeks in lieu of working as well as any unused vacation time you have earned to date." *Id.*

---

[2] G.E. has an extensive and well developed Employee Rehabilitation program which is generally extended to employees after a supervisor or performance review identifies a specific deficiency.

### E. Count 1-Whistleblower Retaliation

34. On January 5, 2010 the 111th Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act. The Act amended the whistleblower protections in the Securities and Exchange Act of 1934 to strengthen prohibitions against retaliation.

35. The Act provides that no employer may discharge, demote, suspend, threaten, harass, directly or indirectly or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of a lawful act done by the whistleblower;

> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18, United States Code, and any other law, rule or regulation subject to the jurisdiction of the Commission. *See* 15 U.S.C. § 78u-6(h)(1)(A)(iii).

36. Pursuant to Section 78u-6(h)(1)(A)(iii), Plaintiff pleads a cause of action against the Defendant for Whistleblower Retaliation.

37. The allegations contained in all of the paragraphs of this complaint are hereby reavverred and realledged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

38. The Plaintiff provided information to his immediate supervisor and to the ombudsperson for G.E. regarding potential violations of the Foreign Corrupt Practices Act committed by G.E. during negotiations for a lucrative, multi-year deal with the Iraqi Ministry of Electricity.

39. Plaintiff asserts that in retaliation for raising these concerns he was harassed, pressured to vacate his position and ultimately discharged from his employment. By engaging in the

conduct described above the Defendant is liable for Whistleblower Retaliation in violation of the Anti-Retaliation Provisions of the Dodd-Frank Act.

**Khaled Asadi's internal disclosures were protected under the Sarbanes-Oxley Act**

40. Plaintiff Khaled Asadi is a whistleblower because he made internal disclosures protected by the Sarbanes-Oxley Act of 2002.

41. The Dodd-Frank Whistleblower Retaliation provisions specifically protect individuals making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002. *See* 15 U.S.C. § 78u-6(h)(1)(A)(iii).

42. The Sarbanes-Oxley Act of 2002 provides that "no company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934…or any officer, employee contractor, subcontractor, or agent of such company…may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee-

> (1) to provide information, cause information to be provided, or otherwise assists in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343 or 1348, any rule or regulation of the Securities and Exchange Commission, or any federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by…(C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct.)" *See* 18 U.S.C. § 1514A (2002).

43. The whistleblower provisions of Sarbanes-Oxley are applicable to G.E. Energy (USA) since its financial information is included in the consolidated financial statements of its parent

company, General Electric. General Electric is a publically traded company required to file reports under section 12 of the Securities Exchange Act of 1934. *See* 18 U.S.C. § 1514A.

44. In this case Mr. Asadi reported to his immediate supervisor that he believed the hiring of a person closely associated with the Iraqi Sr. Deputy Minister of Electricity in order to curry favor with the Ministry could damage G.E.'s reputation in the region and potentially violate the Foreign Corrupt Practices Act.

45. Mr. Asadi took his complaint a step further and reported his concerns to the ombudsperson for the region.

46. Both Mr. Asadi's supervisor and the ombudsperson had the authority to "investigate, discover or terminate misconduct."

47. As a result of this disclosure, Mr. Asadi received adverse employment action in the form of a negative performance review, pressure to step down from his position and ultimately the termination of his employment.

48. By engaging in the conduct described above Mr. Asadi is a whistleblower as defined by Section 78u-6(h)(1)(A)(iii) of Dodd-Frank since his disclosures were protected under the Sarbanes-Oxley Act of 2002.

**Khaled Asadi's internal disclosures were required under the Sarbanes-Oxley Act**

49. The Sarbanes-Oxley Act requires publically traded companies to disclose violations of the Foreign Corrupt Practices Act in its quarterly and annual public filings.

50. Section 302 of the Sarbanes-Oxley Act requires a company to disclose FCPA violations if senior officers are unable to certify the adequacy of the company's internal controls.[3]

---

[3] 15 U.S.C.S. § 7262 (LEXIS 2012) (a) Rules required. The Commission shall prescribe rules requiring each annual report required by section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report, which shall—(1) state the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting; and (2) contain an assessment, as of

51. Annual reporting under Section 404 also requires that public companies disclose violations of the FCPA if they occurred as a result of material deficiencies in the company's internal controls.[4]

52. In this case Mr. Asadi reported to his immediate supervisor that he believed the hiring of a person closely associated with the Iraqi Sr. Deputy Minister of Electricity in order to curry favor with the Ministry could damage G.E.'s reputation in the region and potentially violate the FCPA.

53. Mr. Asadi's internal disclosure prompted an investigation into the underlying FCPA violation, presumably initiated or conducted by the ombudsperson for G.E.

54. As an executive for G.E., Mr. Asadi was required to disclose a potential violation of the FCPA in order for the company to comply with the reporting requirements of Section 302 and 404.

55. G.E. was required to disclose the investigation into the FCPA violation on both its quarterly and annual internal control reports under Sections 302 and 404.

56. By engaging in the conduct described above Mr. Asadi is a whistleblower as defined by Section 78u-6(h)(1)(A)(iii) of Dodd-Frank since he was required to disclosure a potential violation of securities law in order for the company to fulfill its obligations under Sections 302 and 404 of the Sarbanes-Oxley Act of 2002.

### Mr. Asadi's internal disclosure of a potential FCPA Violation was protected.

57. The Anti-Bribery provisions of the Foreign Corrupt Practices Act prohibit any issuer which has a class of securities from using any instrumentality of interstate commerce corruptly

---

the end of the most recent fiscal year of the issuer, of the effectiveness of the internal control structure and procedures of the issuer for financial reporting.
[4] *See* Exchange Act Release No. 51283, SEC Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement on Potential Exchange Act Section 10(b) and Section 14(a) Liability (Mar. 1, 2005).

in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to:

(1) any foreign official for purposes of:

(A) (i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person.. *See* 15 U.S.C. §§ 78d-1 et seq.

58. Violations of the Anti-Bribery Provisions of the FCPA are subject to the jurisdiction of the Securities Exchange Commission.

59. In this case Mr. Asadi made multiple internal reports of potential violations of the Anti-Bribery provisions of the FCPA.

60. Specifically he reported that G.E. had hired a female associate of the Sr. Deputy Minister of Electricity in order to secure a lucrative multi-year deal.

61. By engaging in the conduct described above Mr. Asadi is a whistleblower as defined by Section 78u-6(h)(1)(A)(iii) of Dodd-Frank since he made internal disclosures that were protected under the Anti-Bribery provisions of the Foreign Corrupt Practices Act.

### F. <u>Count 2-Breach of Contract</u>

62. The allegations contained in paragraphs 31-33 of this complaint are hereby reavverred and realledged for all purposes and incorporated herein with the same force and effect as if set

forth verbatim.

63. In terminating Mr. Asadi's employment David Lisabeth in Human Resources for G.E. Energy specifically agreed to pay Mr. Asadi "two weeks salary in addition to any unused vacation time [accrued] to date. Furthermore, [we] will calculate the amount of variable compensation you have earned to date for 2011 [and] will process a second payment accordingly." *See* EX. A

64. To date, G.E. has failed to pay Mr. Asadi the final wages promised by Mr. Lisabeth or any of the variable compensation that he had earned or was otherwise entitled to as of the date of termination.

65. By engaging in the conduct described above the Defendant is liable to the Plaintiff for Breach of Contract.

### G. *G.E.* Dispute Resolution Agreement

66. As part of the initial hiring process the Plaintiff signed an agreement to submit any employment dispute to a four-step dispute resolution process including mediation and binding arbitration rather than filing these claims in court.

67. Section 922 of the Dodd-Frank Act specifically provides that "no pre-dispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under [this] section."

68. Since the Plaintiff's claim arises under the Anti-Whistleblower Retaliation provisions of the Dodd-Frank Act, the binding arbitration provision cannot be enforced in the context of this dispute.

69. On December 11, 2011 the Plaintiff formally initiated any applicable remaining provisions of the G.E. dispute resolution process. *See* EX. B.

70.    To date, the Defendant has failed to engage any aspect of the remaining dispute resolution process in any meaningful way.

### H. Damages

71.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages.

    a.    Plaintiff was discharged from employment with Defendant.

    b.    Plaintiff has not been able to find employment since his wrongful termination.

    c.    Plaintiff suffered economic damages for relocation back to the United States, past and future lost earnings.

    d.    Plaintiff suffered damages due to the Defendants failure to pay final wages and variable compensation earned as of June 24, 2011.

    e.    Plaintiff suffered mental anguish and emotional distress in the form of depression and anxiety.

### I. Attorney Fees

72.    Pursuant to the 78u-6(h)(1)(C) of Dodd-Frank the Plaintiff is entitled to an award of litigation costs and attorney fees.

### J. Prayer

73.    WHEREFORE PREMESIS CONSIDERED the Plaintiff asks for judgment against Defendant for the following:

    a.    Reinstatement to the same seniority status that the Plaintiff would have had but for the discrimination;

b.  Two times the amount of back pay that the Plaintiff would have incurred;

c.  Litigation costs and attorney fees;

d.  Pre-judgment and post judgment interest;

e.  All other relief the court deems appropriate.

Respectfully submitted,

By: __/s/ Ronald E. Dupree_____
Ronald E. Dupree
Texas State Bar No. 24055433
3411 Richmond Avenue, Suite 400
Houston, Texas 77046
E-mail Ronald@dupreelawfirm.com
Tel. 832-220-8108
Fax 832-553-7895

ATTORNEY IN CHARGE FOR
PLAINTIFF, KHALED ASADI

## **CERTIFICATE OF SERVICE**

I certify that a copy of Plaintiff's Amended Original Complaint was electronically filed on April 24, 2012 on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys in charge for defendant, Linda Addison, Darryl Anderson and Eliot F. Turner:

Linda Addison
Darryl Anderson
Eliot F. Turner
Fulbright & Jaworski L.L.P.
1301 McKinney
Suite 5100
Houston, Texas 77010-3095

*/s/ Ronald E. Dupree*
Ronald E. Dupree