**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KHALED ASADI | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-345 |
| | § | |
| G.E. ENERGY (USA), LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Khaled Asadi brings this suit under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 and also pleads a breach of contract claim under Texas law. On February 27, 2012, Defendant G.E. Energy (USA), LLC, ("GE Energy") filed a Motion to Dismiss for Failure to State a Claim [Doc. # 5] ("Motion"). Plaintiff filed multiple responses, *see* Docs. # 6, # 8, # 11, and Defendant filed a reply. *See* Doc. # 7. On April 9, 2012, the Court held oral argument and granted Plaintiff leave to file an amended pleading.[1] After Plaintiff's amendment, the

---

[1]     Hearing Minutes and Order [Doc. # 12].

parties filed supplemental briefing as ordered by the Court.[2]  The Motion is ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted**.

## I.   BACKGROUND

Asadi, in his Amended Complaint, brings a "whistleblower" claim under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"),[3] alleging that GE Energy[4] terminated his employment after Asadi informed his supervisors that GE had potentially violated the Foreign Corrupt Practices Act ("FCPA") and company policies.[5]  Asadi maintains dual citizenship in Iraq and the United States, and was employed by GE Energy from 2006 through 2011 as the GE-Iraq Country Executive.

The Amended Complaint alleges that Asadi was a U.S.-based employee of GE Energy, but agreed to "temporarily relocate" to Amman, Jordan, where he had an

---

[2]     GE Energy filed a supplemental memorandum, *see* Doc. # 15, as well as information requested by the Court during argument.  *See* Doc. # 13.  Plaintiff filed an untimely memorandum, *see*  Doc. # 17, which the Court granted leave to file.  *See* Doc. # 20. Finally, Defendant filed a post-argument reply.  *See* Doc. # 18.

[3]     Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010).

[4]     GE Energy is a wholly owned, direct subsidiary of General Electric Company ("GE"). *See* Certificate of Interested Parties [Doc. # 9].

[5]     Plaintiff's Amended Original Complaint [Doc. # 14] ("Amended Complaint").

office.  Asadi's position required him to coordinate with Iraq's governing bodies in order to secure and manage energy service contracts for GE.  He alleges that, on or about June 2010, while GE was negotiating with the Iraqi Minister of Electricity regarding a Joint Venture Agreement, someone inside the Iraqi government made Asadi aware of an allegedly corrupt action by GE.  In particular, Asadi states that his contact within the Iraqi government was concerned because GE had hired Iman Mahmood, a woman "closely associated" with the Senior Deputy Minister of Electricity, "in order to curry favor with the Minister while negotiating a lucrative Joint Venture Agreement."[6]  Asadi alleges that the Senior Deputy Minister, Raad Al Haris, had specifically requested that GE hire Mahmood for the position.[7]  He further alleges that the Joint Venture Agreement "had long been a subject of speculation for within [sic] the Iraqi government because it was to be a 'Sole Source' contract which is generally not allowed under Iraqi contracting laws."[8]

Asadi states that, because he was concerned that Mahmood's hiring could damage negotiations and violate the FCPA, he immediately reported Mahmood's

---

[6]     *Id.* at 3, ¶ 15.  Asadi states that the seven-year Joint Venture Agreement between GE and the Iraqi Minister of Electricity was signed in Baghdad on December 30, 2010, and was valued at $250,000,000. *Id.* at 3-4, n.1.

[7]     *Id.* at 4, ¶ 17.  *See id.*, ¶ 18 ("the source specifically warned that G.E. was 'pimping its way to the agreement with the hiring of [Mahmood]'") (alteration in original).

[8]     *Id.*, ¶ 20.

hiring to his supervisor, Joseph Anix, a Regional Executive for GE.  He also states that he brought to attention to a colleague from GE's Oil and Gas Division and subsequently, with that colleague, reported the Mahmood hiring to "the ombudsperson for G.E."[9]  The ombudsperson contacted and interviewed Asadi.

Asadi alleges that, shortly after his interview with the ombudsperson, he received a "surprisingly negative" performance review.[10]  He states that his previous ten reviews with GE Energy had been positive.  He also states that the review did not identify specific performance issues or give him the opportunity to correct or improve his performance.

Subsequently, Asadi alleges that he experienced pressure to step down from his position, despite the fact that his assignment with GE had recently been extended for two years.  Anis, his supervisor, encouraged him to accept "a reduced role in the region with little or no responsibility."[11]  He states that GE began "constant and aggressive severance negotiations" with him, which continued until GE "abruptly ended all discussions and terminated the Plaintiff's employment on June 24, 2011."[12]

---

[9]      *Id.*, ¶ 22.

[10]     *Id.* at 5, ¶ 25.

[11]     *Id.*, ¶ 27.

[12]     *Id.*, ¶¶ 29-30.

Asadi was informed of his termination by an email from David Lisabeth from GE Energy's Human Resources Department.   The email states that GE was terminating his employment "as an at-will employee, as allowed under U.S. law" and that "[a]s a U.S.-based employee you will be terminated in the U.S. . . ."[13]   Asadi subsequently brought this suit alleging that his termination was illegal retaliation for his disclosures of the alleged bribery.

## II.   <u>RULE 12(B)(6) STANDARD</u>

Traditionally, courts view a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim with disfavor.[14]   The Supreme Court has explained that in considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.[15]   However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16]   The

---

[13]   Email from D. Lisabeth to K. Asadi, dated June 24, 2011 (Exhibit A to Amended Complaint) ("Termination Email").

[14]   *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[15]   *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted))).

[16]   *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17]   When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to a claim to relief.[18]   This determination of plausibility is a context-specific task that requires the court to draw on its judicial experience and common sense.[19]

In considering a motion to dismiss, a court ordinarily must limit itself to the contents of the pleadings and attachments thereto.[20]   Documents "that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[21]   "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[22]

---

[17]   *Id*. (quoting *Twombly*, 550 U.S. at 570).

[18]   *Id.* at 1950.

[19]   *Id.*

[20]   *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).

[21]   *Id.* at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

[22]   *Collins*, 224 F.3d at 499.

These presumably are documents whose authenticity no party questions.[23]

## III.   ANALYSIS

## A.   Dodd-Frank Act Claim

Asadi's Amended Complaint brings a claim for whistleblower retaliation under the Dodd-Frank Act.  Congress enacted Dodd-Frank in 2010, in the wake of the 2008 financial crisis, to improve the accountability and transparency of the financial system.[24]  Among the key provisions of Dodd-Frank were its new incentives and protections for whistleblowers.  The statute creates a private cause of action for whistleblowers who are subject to retaliatory discharge,[25] and permits relief including reinstatement and back pay for a whistleblower who prevails in federal court.[26]

### 1.      Definition of Whistleblower

The Dodd-Frank Act defines a "whistleblower" as a person or persons who report a violation of securities laws to the Securities and Exchange Commission

---

[23]   *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed.2004)).

[24]   Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("An Act [t]o promote the financial stability of the United States by improving accountability and transparency in the financial system, to end 'too big to fail', to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes").

[25]   15 U.S.C. § 78u-6(h)(1)(B)(i).

[26]   15 U.S.C. § 78u-6(h)(1)(C).

("SEC"):

> The term "whistleblower" means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws ***to the [Securities and Exchange] Commission***, in a manner established, by rule or regulation, by the Commission.[27]

Plaintiff Asadi does not claim that he reported GE's alleged FCPA violation to the SEC, but rather claims to have furnished the information to his supervisor and to GE's ombudsperson.  Therefore, Plaintiff does not fit within Dodd-Frank's definition of a whistleblower.

However, Plaintiff argues that he nevertheless can qualify as a Dodd-Frank "whistleblower" because he fits within the language of 15 U.S.C. § 78u-6(h)(1)(A) ("Anti-Retaliation Provision"), the Provision under which he brings this suit.[28]  The Anti-Retaliation Provision prohibits an employer from retaliating against a whistleblower "because of any lawful act done by the whistleblower":

> in making disclosures that are ***required or protected*** under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. [78j-1(m)]), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the

---

[27]   15 U.S.C. § 78u-6(a)(6) (emphasis added).

[28]   15 U.S.C. § 78u-6(h)(1)(A).

Commission.[29]

Thus Asadi argues, and at least two courts have held, that a "whistleblower" for Dodd-Frank retaliation purposes actually is broader than the statutory definition.[30]   In

---

[29]     15 U.S.C. § 78u-6(h)(1)(A)(iii) (emphasis added).

[30]     *See Nollner v. Southern Baptist Convention, Inc.*, ___ F. Supp. 2d ___, 2012 WL 1108923, at *10  (M.D. Tenn. April 3, 2012) (Trauger, J.); *Egan v. TradingScreen, Inc.*, 2011 WL 1672066 (S.D.N.Y. May 4, 2011) (Sand, J.) (*Egan I*). *Egan I*, deciding an issue of first impression in the federal courts, noted the conflict between Dodd-Frank's statutory definition of "whistleblower" and the Anti-Retaliation Provision, observing that a literal reading of the definition requiring reporting to the SEC would "effectively invalidate" the Provision's protection of disclosures that do not require reporting to the SEC.  *Egan I*, 2011 WL 1572066, at *4.   The Court concluded that the contradictory provisions "are best harmonized" by reading the Provision's inclusions of reports that are not made to the SEC as a "narrow exception" to the statutory definition of a "whistleblower" as one who makes a report to the SEC.  *Id*. at *5.  It therefore held that the plaintiff was required to allege *either* that he reported information to the SEC *or* that his disclosures fell under the categories of the Provision, which the Court listed as (1) disclosures under Sarbanes-Oxley, (2) disclosures under the Securities and Exchange Act, (3) disclosures under 18 U.S.C. § 1513(e), or (4) disclosures under other laws and regulations subject to the SEC's jurisdiction.  *Id*. at *5.

In April 2012, the district court in *Nollner* discussed *Egan I* when deciding a claim under the Anti-Retaliation Provision.  *Nollner*, 2012 WL 1108923, at *6 & n.9.  *Nollner* held that the Anti-Retaliation Provision could apply to disclosures not made to the SEC: "[F]or example, if one of the referenced acts either (a) required an employee to report a potential securities violation internally or (b) protected an employee's disclosure of that information to another federal agency or federal law enforcement officer, § 78u-6(h)(1)(A)(iii) would prohibit retaliation against that whistleblower by the whistleblower's employer."  *Id.* at *6.  The district court in *Nollner* also noted that SEC rules implementing the Provision state that disclosures by employees of public companies not made to the SEC can be covered by the Provision if the disclosures are reported "to federal regulatory or law enforcement agencies, a member or committee of Congress, or a person with supervisory authority over the employee with authority to investigate, discover, or terminate misconduct."
(continued...)

particular, Asadi argues that even if he did not make a report directly to the SEC, he

can qualify as a Dodd-Frank whistleblower because his disclosures were "required"

or "protected" under the Sarbanes-Oxley Act of 2002 (15 U.S.C. § 7201 *et seq.*)

("SOX") and the FCPA.[31]  Defendant argues that *Egan I* was wrongly decided, and

that Plaintiff should be held to Dodd-Frank's statutory definition of "whistleblower,"

which requires a report to the SEC.[32]

The Court need not reach the issue of whether Plaintiff qualifies as a

whistleblower under the Anti-Retaliation Provision.  As explained below, each of

---

[30]     (...continued)
*Id.* at *6 & n.9  (citing Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300-01, 34304 (June 13, 2011) (codified at 17 C.F.R. pts. 240, 249)).

[31]     Asadi argues that his disclosures fit within the Anti-Retaliation Provision in three ways.  First, Asadi argues that he was retaliated against because he made disclosures "protected" under SOX when he reported the alleged violation of the FCPA to his supervisor and the ombudsperson.  Amended Complaint, at 7-8, ¶¶ 40-48 (citing 18 U.S.C. § 1514A(a)).  Second, Asadi argues that Sections 302 and 404 of SOX "required" him, as a GE executive, to disclose the potential FCPA violation, and further required GE to disclose the investigation on its quarterly and annual internal control reports.  *Id.*, at 8-9, ¶¶ 49-56.  Third, Asadi argues that his internal disclosures at GE were "protected" by the FCPA, and that the FCPA fits within the Anti-Retaliation Provision because it is a law subject to SEC jurisdiction.  *Id.* at 9-10, ¶¶ 57-61.

[32]     *See, e.g.,* Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss [Doc. # 7], at 4-6; GE Energy's Supplemental Memorandum [Doc. # 15], at 3-5 (discussing legislative history of Dodd-Frank and noting that the original bill prohibited retaliation against "an employer, contractor, or agent," but that the final text replaced that language with the statutorily defined term "whistleblower," suggesting a scheme that integrated the "whistleblower" definition under Section 78u-6(a)(6) requiring a report to the SEC).  Defendant does not mention *Nollner*.

Plaintiff's claims fails on other grounds.

### 2.    Extraterritoriality of the Anti-Retaliation Provision

This case requires the Court to decide whether Dodd-Frank's Anti-Retaliation Provision applies extraterritorially. Asadi argues that it does. He further argues that SOX and the FCPA, as incorporated into the Anti-Retaliation Provision, operate to extend the Provision's territorial reach.

The Supreme Court, in *Morrison v. National Australia Bank, Ltd*., recently reaffirmed the "longstanding principle" that Congress' legislation does not apply outside the United States "unless a contrary intent appears."[33]  "Thus, 'unless there is the affirmative intention of the Congress clearly expressed' to give a statute extraterritorial effect, 'we must presume it is primarily concerned with domestic conditions.'"[34]  This presumption against extraterritoriality means that, "When a statute gives no clear indication of an extraterritorial application, it has none."[35]  In addition to the statutory language itself, the courts may consult the language's

---

[33]    *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) (internal citations and quotation marks omitted).

[34]    *Id*. (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*")).

[35]    *Id*. at 2878.

"context."[36]

In *Morrison*, the Court considered Section 10(b) of the Securities and Exchange Act of 1934, which is silent regarding extraterritorial effect.  The *Morrison* plaintiffs were foreign investors who sued foreign and American defendants for alleged misconduct in trading on foreign exchanges.  The Supreme Court relied on the statute's plain language in holding that it had no extraterritorial application: "In short, there is no affirmative indication in the Exchange Act that § 10(b) applies extraterritorially, and we therefore conclude that it does not."[37]

Like the language of Section 10(b), the language of the Dodd-Frank Anti-

---

[36]    *Id*. at 2883 ("[W]e do not say, as the concurrence seems to think that the presumption against extraterritoriality is a 'clear statement rule,' if by that is meant a requirement that a statute say 'this law applies abroad.'  Assuredly context can be consulted as well.") (internal citation omitted).  The *Morrison* Court considered statutory definitions, the purposes of the Securities and Exchange Act, and other provisions of the Securities and Exchange Act when determining whether Section 10(b) of the Act applied extraterritorially.

[37]    *Id*. at 2883.  Plaintiff argues for a limited application of *Morrison*, emphasizing that *Morrison*'s facts involved foreign plaintiffs suing foreign and American defendants for fraud in trading on foreign exchanges.  In *Morrison*, however, the Court explicitly stated that the presumption against extraterritoriality applies in "all cases." *Id*. at 2881 ("Rather than guess anew in each case, we apply the presumption in all cases, preserving a stable background against which Congress can legislate with predictable effects").  Since the 2010 decision, lower courts have applied *Morrison* beyond the Section 10(b) context. *See, e.g.*, *Norex Petroleum v. Access Inds*., 631 F.3d 29, 33 (2d Cir. 2010) (applying presumption against extraterritoriality to RICO provision).

Retaliation Provision is silent regarding whether it applies extraterritorially.[38]   The

Court therefore applies the presumption that the Provision does not govern conduct

outside the United States.   As in *Morrison*, the Court proceeds to consider the

Provision's "context."[39]

      This conclusion against extraterritorial application is reinforced by Section

929P(b) of Dodd-Frank, which explicitly addresses extraterritorial scope of the statute

in a limited context.   Section 929P(b) gives the district courts extraterritorial

jurisdiction, but only over certain enforcement actions brought by the SEC or the

United States.[40]   By their plain language, these provisions do not apply to private

---

[38]   15 U.S.C. § 78u-6(h)(1)(A).   The Court notes that Dodd-Frank defines "whistleblower" broadly as "any individual" who reports a violation of the securities laws to the SEC, 15 U.S.C. § 78u-6(a)(6), and the term "any individual" is broad enough to include overseas whistleblowers.   Similarly, the section providing for private causes of action applies to "an individual" who alleges discharge in violation of the Anti-Retaliation Provision.   *Id.* § 78u-6(h)(1)(B)(i).   However, *Morrison* held that broad definitional language is insufficient to rebut the presumption against extraterritoriality.   *See Morrison*, 130 S. Ct. at 2882 ("'[W]e have repeatedly held that even statutes that contain broad language in their definitions of "commerce" that expressly refer to "foreign commerce" do not apply abroad.'") (alteration added) (quoting *Aramco*, 499 U.S. at 251).

[39]   *Id.* at 2883.

[40]   Dodd-Frank, § 929P(b), 124 Stat. 1376.   Section 929P(b) amended three statutory sections (15 U.S.C. § 77v(a), 15 U.S.C. § 78aa, and 15 U.S.C. § 80b–14) by adding a new subsection entitled "Extraterritorial Jurisdiction."   Each of the three provisions granted jurisdiction to the federal courts over an "action or proceeding brought or instituted by the Commission or the United States" that alleged a statutory violation involving either (1) "conduct within the United States that constitutes significant steps
(continued...)

actions such as Plaintiff's.[41]   The *Morrison* Court considered an analogous provision under the Exchange Act that explicitly discussed extraterritorial application.[42]   The Court noted that the specific extraterritorial application of one section "would be quite superfluous" if the rest of the statute already applied to foreign exchanges.[43]   The Court emphasized that "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."[44]   The language of Dodd-Frank's Section 929P(b) thus strengthens the

---

[40]   (...continued)
in furtherance of the violation," even if the relevant transaction or violation occurred outside the United States and involved only foreign investors; or (2) "conduct occurring outside the United States that has a foreseeable substantial effect within the United States."   *Id.*

[41]   *See* MICHAEL J. KAUFMAN, SECURITIES LITIGATION: DAMAGES §5E:5 (2011) (available on Westlaw at 26 Sec. Lit. Damages §5E:5) (Dodd-Frank's Section 929P extended territorial reach of the anti-fraud provisions of securities laws, but only with respect to enforcement actions by the SEC; for private actions under the securities laws, Dodd-Frank did not extend territorial reach for private actions under the securities laws).   The legislative history of Dodd-Frank confirms this interpretation. *See* Letter to Court from Defense Counsel, dated April 20, 2012 [Doc. # 13] (attaching excerpts of Congressional Record) (statements of Rep. Paul Kanjorski and Sen. Harry Reid demonstrate lawmakers' understanding that extraterritorial reach was limited to actions brought by the SEC or the Department of Justice).

[42]   *Morrison*, 130 S. Ct. at 2883 (discussing Section 30(a) of the Exchange Act).

[43]   *Id.*

[44]   *Id. See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal alteration, quotation marks, and
(continued...)

conclusion that the Anti-Retaliation Provision does not apply extraterritorially.[45]

Asadi also argues that the Anti-Retaliation Provision should apply to Asadi, a dual U.S. and Iraqi citizen, because he was terminated in the U.S. "as an at-will employee, as allowed under U.S. law."[46]   However, as stated in the Amended

[44]   (...continued)
citation omitted); *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 398 n.33 (5th Cir. 2008).

[45]   In addition, Section 929Y of the Dodd-Frank Act directs the SEC to solicit public comment, and thereafter conduct a study, to determine the extent to which private rights of action under the anti-fraud provisions of the Securities Exchange Act "should be extended to cover" conduct and transactions outside the United States. *See* Dodd-Frank § 929Y(a), 124 Stat. 1376 ("The Securities and Exchange Commission of the United States shall solicit public comment and thereafter conduct a study to determine the extent to which private rights of action under the antifraud provisions of the Securities and Exchange Act of 1934 (15 U.S.C. [§] 78u–4) should be extended to cover (1) conduct within the United States that constitutes a significant step in the furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; and (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States."). The referenced provision, 15 U.S.C. § 78u–4, pertains to private class action lawsuits alleging securities fraud.  In other words, Congress ordered a study on whether private anti-fraud actions should be "extended" to include conduct or transactions outside the United States. *See* KAUFMAN, SECURITIES LITIGATION: DAMAGES §5E:5 (Dodd-Frank did not extend territorial reach for private actions under the securities laws, although Section 929Y did order an SEC study on the impact of extending territorial reach for private actions).  This Dodd-Frank provision, with its explicit instruction to study the impact of extraterritorial application in anti-fraud actions, is further evidence that Congress did not intend for private causes of action under the statute's Anti-Retaliation Provision to have extraterritorial scope. *See Morrison*, 130 S. Ct. at 2883; *Russello*, 464 U.S. at 23; *Mukasey*, 536 F.3d at 398 n.33.

[46]   Plaintiff's Supplemental Memorandum [Doc. # 17], at 17.  *See* Termination Email (Exhibit A to Amended Complaint) ("GE is exercising its right to terminate your employment as an at-will employee, as allowed under U.S. law and described in your
(continued...)

Complaint, "the majority of events giving rise to the suit occurred in a foreign country."[47]  As Defendant argues, the Termination Email invoking U.S. employment law was sent to Asadi in Jordan, was related to his employment in Jordan, and says that a letter would be sent to Asadi's home in Jordan.  Under *Morrison*, the email's reference to U.S. employment law is insufficient to extend the territorial reach of the Anti-Retaliation Provision.  The Supreme Court rejected the *Morrison* plaintiff's argument that Section 10(b) should apply because some of the deceptive conduct had occurred in Florida.  The Court noted that "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States."[48]

The Court holds that the Anti-Retaliation Provision does not extend to or protect Asadi's extraterritorial whistleblowing activity.

---

[46]     (...continued)
        expatriate assignment letter.  As a U.S. based employee you will be terminated in the U.S.").

[47]     Amended Complaint, at 2, ¶ 6  ("There is no district where suit may otherwise be brought under 28 U.S.C. § 1391(b)(3) since the majority of the events giving rise to the suit occurred in a foreign country.").

[48]     *Morrison*, 130 S. Ct. at 2884 (emphasis original).  The *Morrison* Court cited *Aramco*, in which the Court held that Title VII does not apply to an employment discrimination claim brought by a U.S. citizen against his U.S. employer, because the plaintiff was employed abroad.  "Applying the same mode of analysis [as in *Aramco*], we think that the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States." *Id.*

### 3.    The Anti-Retaliation Provision's Interaction with SOX and the FCPA

Plaintiff further alleges that the Anti-Retaliation Provision applies to his facts because his disclosures were either protected or required by SOX or the FCPA, which are incorporated into the Provision.[49]  In other words, he argues that even if the Anti-Retaliation Provision *per se* is not extraterritorial, the Provision's reach is extended because other statutes incorporated into the Provision have extraterritorial reach and those provisions either protected or required his overseas disclosures.[50]

Neither the Supreme Court nor the Fifth Circuit have ruled whether the Dodd-Frank Anti-Retaliation Provision has extraterritorial effect because or to the extent it incorporates another federal statute with extraterritorial scope.  However, in the RICO context, multiple courts have held that predicate acts in foreign countries in violation of statutes with extraterritorial reach are insufficient to rebut the

---

[49]    *See* 15 U.S.C. § 78u-6(h)(1)(A)(iii) (prohibiting retaliation against a whistleblower because of any lawful act in making disclosures "that are ***required or protected*** under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq.*), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. [78j-1(m)]), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission") (emphasis added).

[50]    *See, e.g.*, Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss for Failure to State a Claim [Doc. # 6], at 17 (FCPA provisions have clear extraterritorial application, and "[s]ince the prosecution of these violations extraterritorially is well suported in the law the protection for whistleblowers [under Dodd-Frank] . . . should follow").

presumption against extraterritoriality of the encompassing statute.[51]

In any event, the Court need not decide the issue in order to resolve the case at bar, because Asadi's claims fail on other grounds.

**SOX.**— As to his argument that SOX extends the territorial reach of the Anti-Retaliation Provision, Asadi's argument fails because the provisions of SOX on which Plaintiff relies either lack extraterritorial reach or do not apply to his case.

First, Asadi claims that his disclosures were protected by Section 806 of SOX, 18 U.S.C. § 1514A, a whistleblower provision. However, in the pre-*Morrison* case of *Carnero v. Boston Scientific Corporation*, the First Circuit held that Section 806 of SOX lacked extraterritorial effect.[52] The defendant, Boston Scientific Corporation ("BSC"), was a U.S. corporation; the plaintiff, Carnero, was a foreign national

---

[51]   *See Norex Petroleum v. Access Indus.*, 631 F.3d 29, 33 (2d Cir. 2010) (holding that Morrison "foreclose[d]" appellant's argument that "because a number of RICO's predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach") (citing *Morrison*, 130 S. Ct. at 2882-83); *U.S. v. Phillip Morris USA, Inc.*, 783 F. Supp. 2d 23, 29 (D.D.C. 2011) (Kessler, J.) (holding that "whether or not a criminal enterprise committed a predicate act with extraterritorial scope . . . there is no evidence that Congress intended to criminalize foreign racketeering activities under RICO"); *Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010) (Rakoff, J.) ("Plaintiffs' superficial argument—that since the federal statutes prohibiting money laundering are (they say) extraterritorial in nature, a RICO action predicated on violations of those statutes should be given extraterritorial application—thus entirely misapprehends both the teachings of *Morrison* and the nature of RICO")).

[52]   *Carnero v. Boston Scientific Corp.*, 433 F.3d 4, 18 (1st Cir. 2006) (construing Section 806 of SOX, 18 U.S.C. § 1514A).

employed by two of BSC's foreign subsidiaries and working primarily outside the United States.  After Carnero's employment was terminated, he brought suit under SOX's whistleblower provision, alleging that his termination was in retaliation for his reports to BSC that BSC's foreign subsidiaries were engaged in accounting misconduct.  The First Circuit held that, although BSC was covered by SOX, the statute's whistleblower provision did not extend to protect a foreign citizen working outside of the U.S. for BSC's foreign subsidiaries.  The Court relied heavily on the presumption against extraterritorial application, noting that the SOX  provision was silent as to its territorial reach.[53]  The Court's holding is in harmony with *Morrison*, decided several years later, reaffirming the presumption against extraterritorial application.

In December 2011, the Department of Labor's Administrative Review Board ("ARB"), sitting *en banc*, also held that SOX's whistleblower provision does not apply extraterritorially.  In *Villanueva v. Core Laboratories NV*,[54] the ARB considered a whistleblower complaint filed by a foreign citizen who worked in Colombia for a

---

[53]     *Id. at* 8. The *Carnero* court held that the statutory language and structure, the legislative history, the difficulty of extraterritorial enforcement, and the absence of a venue provision tailored to claims based on overseas conduct failed to reflect the "necessary clear expression of congressional intent" to overcome the presumption against extraterritoriality.  *Id*. at 18.

[54]     *Villanueva v. Core Laboratories NV*, 2011 WL 6981989, ARB No. 09-108, ALJ No. 2009-SOX-6 (ARB Dec. 22, 2011) (en banc) (construing 18 U.S.C. § 1514A).

Colombian company.  Its decision relied upon *Morrison* and *Carnero*, and also explicitly considered the effect of Dodd Frank's Section 929A, which amended the relevant whistleblower provision under SOX.  The ARB concluded that because the Dodd-Frank provision also was silent as to extraterritorial application, it did not extend the territorial reach of the SOX whistleblower provision.[55]

Second, Asadi invokes Sections 302 and 404 of SOX, arguing that they required the disclosure of the alleged FCPA violations.[56]  However, these provisions pertain to required disclosures and internal controls by certain ***companies*** subject to SOX.[57]  Plaintiff has cited the Court to no authority suggesting that these provisions "required" his individual, internal disclosure of the alleged FCPA violations.[58]

---

[55]  *Id.*, 2011 WL 6981989, at *9 (holding that the explicit extraterritorial application in Dodd-Frank Section 929P strengthened the conclusion that Dodd-Frank Section 929A, which is silent as to extraterritorial application, did not apply extraterritorially).

[56]  Amended Complaint, at 8-9.

[57]  *See* 15 U.S.C. § 7241 (codifying Section 302 of SOX; entitled "Corporate responsibility for financial reports"); 15 U.S.C. § 7262 (codifying Section 404 of SOX; entitled "Management assessment of internal controls").  Section 302 requires "the principal executive officer or officers and the principal financial officer or officers, or persons performing similar functions" to certify he or she has reviewed the statutorily mandated periodic reports and that, among other things, the report does not contain an untrue statement of material fact or omit a material fact.  Asadi has not argued that he is an "officer" subject to Section 302's requirements.  Rather, Asadi argues that GE, as a publicly traded company, was required by Sections 302 and 404 to disclose potential violations of the FCPA.  *See, e.g.*, Doc. # 11, at 14.

[58]  *See Nollner*, 2012 WL 1108923, at *7 (Dodd-Frank's Anti-Retaliation Provision
(continued...)

Further, the provisions do not explicitly address extraterritorial application.  Plaintiff

has not demonstrated that the cited SOX provisions extend the territorial reach of the

Anti-Retaliation Provision or otherwise provide him with any claim to relief.

**FCPA.**— Plaintiff argues that the FCPA qualifies as a "law, rule, or regulation

subject to the jurisdiction of the Commission" directly protected by the Provision.[59]

Plaintiff further argues that, because the FCPA is clearly intended to apply

extraterritorially, the Provision also must apply extraterritorially.

However, because the facts alleged by Asadi do not fit within the Anti-

Retaliation Provision, the Court need not, and does not, address Asadi's argument that

the FCPA extends the territorial reach of the Provision.  The Provision states that an

employer may not retaliate against a whistleblower because of the whistleblower's

---

[58]    (...continued)
protects whistleblowers who make "protected" or "required" disclosures) (discussing
*Egan I*, 2011 WL 1672066, at *6).

[59]    *See* 15 U.S.C. § 78u–6(h)(1)(A)(iii).  The Court assumes, without reaching the issue,
that the FCPA provisions at issue qualify as a law subject to the jurisdiction of the
SEC, for purposes of the Anti-Retaliation Provision.  The FCPA's anti-bribery
provisions are codified at 15 U.S.C. § 78dd-1 ("Prohibited foreign trade practices by
issuers"), 15 U.S.C. § 78dd-2 ("Prohibited foreign trade practices by domestic
concerns"), and 15 U.S.C. § 78dd-3 ("Prohibited foreign trade practices by persons
other than issuers or domestic concerns").  "[T]he SEC has enforcement responsibility
over FCPA violations by issuers, . . . [but] the DOJ has enforcement responsibility over
FCPA violations by domestic concerns and other non-issuer entities subject to
the FCPA."  *Nollner*, 2012 WL 1108923, at *7.

lawful acts "in making disclosures that are **_required or protected_**"[60] under the relevant

law, which for present purposes is the FCPA.  "[A]n employee is not protected from

retaliation if the disclosure at issue—even if it relates to an actual legal violation by

the employer—concerns a disclosure that is not 'required' or otherwise 'protected' by

a law, rule, regulation within the SEC's jurisdiction."[61]  The _Egan I_ court reached the

same conclusion, stating, "[m]erely alleging the violation of a law or rule under the

SEC's purview is not enough; a plaintiff must allege that a law or rule in the SEC's

jurisdiction explicitly requires or protects disclosure of that violation."[62]  Although

Asadi has alleged that his internal disclosures at GE pertained to bribery of foreign

officials,[63] he has cited the Court to no provision of the FCPA that "protects" or

"requires" his internal report of the alleged bribery.[64]  Therefore, the Provision does

---

[60]     15 U.S.C. § 78u-6(h)(1)(A)(iii) (emphasis added)

[61]     _Nollner_, 2012 WL 1108923, at *7, holding that the plaintiff's reporting of alleged
         FCPA violations did not support a claim for relief under Dodd-Frank's Anti-
         Retaliation Provision.

[62]     _Egan I_, 2011 WL 1672066, at *6.

[63]     For purposes of this decision the Court assumes, without deciding, that Asadi's
         allegations would fit within the anti-bribery provisions of the FCPA.

[64]     Several other courts have recognized that the FCPA does not protect whistleblowers
         or provide a private cause of action.  _Scientific Drilling Int'l v. Gyrodata Corp_., 215
         F.3d 1351 (Fed. Cir. Aug. 30, 1999) (construing Fifth Circuit law); _Lamb v. Phillip
         Morris, Inc_., 915 F.2d 1024, 1029-30 (6th Cir. 1990);  _RSM Prod. Corp. v. Fridman_,
         643 F. Supp. 2d 382, 412 (S.D.N.Y. 2009), _aff'd_, 387 Fed. Appx. 72 (2d Cir. 2010);
                                                                            (continued...)

not protect Asadi against retaliation for his disclosures of the alleged bribery.

### 4.  Conclusion regarding Dodd-Frank Act Claim

The Court holds that Dodd-Frank's Anti-Retaliation Provision *per se* does not

apply extraterritorially.  The Court further holds that, under the facts of this case, the

cited provisions of SOX and the FCPA, as incorporated into the Anti-Retaliation

Provision, do not provide Plaintiff with relief for the alleged retaliation against him.

## B.  <u>Breach of Contract Claim</u>

Asadi brings a breach of contract claim, alleging that GE Energy has failed to

pay Asadi as promised when he was terminated.  The Termination Email promises

"two weeks salary in addition to any unused vacation time," as well as "the amount

of variable compensation you have earned to date for 2011."[65]  Asadi alleges that GE

Energy has not paid as agreed.  GE Energy's supplemental briefing urges dismissal

of the breach of contract claim.[66]

---

[64]     (...continued)
*see also Nollner,* 2012 WL 1108923, at *10.

[65]     *See* Termination Email (Exhibit A to Amended Complaint).

[66]     Because Asadi's breach of contract claim was newly added in his Amended
Complaint, filed on April 24, 2012, Defendant's Motion to Dismiss [Doc. # 5], filed
on February 27, 2012, did not move for dismissal of the claim.  However, in its
supplemental briefing filed after the Amended Complaint, GE Energy expressly seeks
dismissal of the claim.  *See* Docs. # 15, 18.  Although Plaintiff has filed briefing in
response to Defendant's supplemental briefing, he failed to respond to Defendant's
(continued...)

Plaintiff's Amended Complaint invokes the Court's jurisdiction over the federal question posed by his Dodd-Frank claim.[67] If Plaintiff's Dodd-Frank claim had survived Defendant's motion to dismiss, the Court's exercise of supplemental jurisdiction over his breach of contract claim could be appropriate.[68] However, given that Plaintiff's Dodd-Frank claim is dismissed, the Court declines to exercise supplemental jurisdiction.[69]

The Amended Complaint does not invoke the Court's diversity jurisdiction, nor does he plead that the amount in controversy meets the jurisdictional minimum.[70] Despite Defendant's argument for dismissal in its supplemental briefing, Asadi has made no argument in his subsequent briefing that opposes the Court's dismissal of his

---

[66]   (...continued)
        request for dismissal of the claim.

[67]   Amended Complaint, at 1, ¶ 3.  *See* 28 U.S.C. § 1331.

[68]   *See* 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

[69]   28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . .").

[70]   *See* 28 U.S.C. § 1332.

breach of contract claim.[71]  Asadi, as the party asserting federal jurisdiction, has the burden to establish the basis for jurisdiction, and his failure to do so mandates dismissal.[72]

Asadi's breach of contract claim is dismissed without prejudice.

## IV.   **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim [Doc. # 5] is **GRANTED.**  Plaintiff Asadi's Dodd-Frank claim is dismissed with prejudice and his breach of contract claim is dismissed without prejudice.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **28th** day of **June, 2012**.

Nancy F. Atlas
United States District Judge

---

[71]     *See* Doc. # 17.

[72]     *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).